OBION COUNTY v. HEFLEY et al.—195 S. W. (2d) 783.

Western Section.   October 31, 1944.

Petition for Certiorari denied by Supreme Court, March 3, 1945.

J. L. Fry, of Union City, for appellant.

C. W. Tuley, Asst. Atty. Gen., for the State.

J. Howell Glover, of Union City, for appellee.

BAPTIST, J. The bill which was filed on May 15, 1941, in the Chancery Court of Obion County, alleges that Roy Threlkeld is an inmate of the Western State Hospital located in Hardeman County, Tennessee; that he was committed to said Hospital on July 23, 1901, by proper orders of Obion County, because he was, and is, a non compos mentis, and has been a continuous inmate of said Hospital since the date of said commitment; that he was committed as a pay patient upon the part of Obion County; that he has been there continuously since said date except for an interval when he was paroled on October 3, 1907, and recommitted on November 7, 1907; that Obion

County has been paying at the rate of $200 per year for his board, clothing, support and medical bills rendered to him by the said Hospital; that at the time he was committed to said Hospital he had no guardian and no funds.

That on January 8, 1923, J. A. Threlkeld qualified in the County Court of Obion County as guardian and received funds belonging to the said Roy Threlkeld, but he never paid any of the expenses for the said Roy Threlkeld; that it has recently come to the attention of the complainant about said funds belonging to the said Roy Threlkeld; that J. A. Threlkeld resigned as guardian in the early part of the year 1941, and the defendant J. V. Hefley qualified as such guardian and now has in his hands $2840 belonging to the said Roy Threlkeld.

The bill prays a judgment against the guardian for $3000, stating that a judgment for any larger amount would be of no value, and that the guardian be required to apply the funds in his hands to the discharge of the judgment sought.

The defendant, J. V. Hefley, as guardian, filed a demurrer and answer, which, in effect, denied that Obion County was entitled to a judgment and demanded strict proof of all allegations in the bill.

On June 11, 1942, after a part of the evidence had been taken by the complainant, the State of Tennessee filed its petition in the cause, requesting to become a party, and alleging that Roy Threlkeld has been an inmate of the Western State Hospital from November 19, 1901, to February 2, 1942, as a State pay patient; that for his maintenance and upkeep during that period he and his estate is indebted to the State of Tennessee in the sum of $6851.13; that any sum of money in the hands of the guardian of said Roy Threlkeld should be applied on this indebtedness.

The original bill was predicated upon the proposition that Roy Threlkeld was committed to the hospital in 1901 as a County pay patient, and from that time Obion County had been paying at the rate of $200 per year for his board, etc. There was no evidence offered by the complainant of any specific payment for this patient. The testimony of J. A. Hefley, County Judge of Obion County, that since he became Judge in 1934 Roy Threlkeld had been in the hospital at Bolivar; that the State had paid for thirty patients from Obion County, the County paying for all over that number; that the State Hospital sends a bill to the County every three months and the County pays the bill for the County pay patients. The evidence showed that the County kept no account of individual patients, but paid a lump sum on the quarterly account rendered by the State; that a list was sent each quarter showing only the ones chargeable to the County, however, this is arrived at through no special designation as State or County pay patients, but simply as the difference between the number confined in the hospital and the number absorbed by the State, based upon one patient per every one thousand population of the County.

After the proof for the complainant had been taken and the intervening petition of the State had been filed, the chancellor held that the record did not show whether the County or the State had maintained Roy Threlkeld, and that it was impossible to determine the question involved; therefore, the chancellor ordered a reference to the Master to take proof and report:

"1. The period of time the said Roy Threlkeld has been confined in the Western State Hospital.

"2. Whether or not the County of Obion paid for his maintenance in said hospital and if so: (a) How long a period of time (b) The amount so paid.

"3. Whether or not the State of Tennessee maintained the said Roy Threlkeld in said hospital and if so: (a) For how long a period of time. (b) How much expended for said maintenance or charged."

Upon this order the Clerk and Master took the deposition of Charles H. Nash, Jr., Assistant Commissioner of Institutions, and reported: .

First: That Roy Threlkeld was committed to the Western State Hospital on July 24, 1901, and had been a patient there from that date until the date of the report, except for an interval from October 3, 1907, to November 22, 1907.

Second: That the patient was committed as a County pay patient from Obion County and was maintained at the expense of the County for three periods of time: July 24, 1901, to November 19, 1901; November 22, 1907, to October 14, 1908, and from February 2, 1942, to June 19, 1943, and for these periods the County had paid the sum of $441.50, and that no other charge was entered against the County for the patient's maintenance during the period from July 24, 1901, until June 19, 1943.

Third: That the records of the hospital show that the State of Tennessee expended for the maintenance of the patient the sum of $6851.13.

Exceptions were made to this report, but the exception overruled and the report was confirmed. A decree was entered that the State of Tennessee was entitled to recover of the estate of Roy Threlkeld, for his maintenance in the hospital, the sum of $6851.13; that Obion County had expended for the maintenance of the patient the sum of $441.50, but that only $276.11 of said amount was not barred by the statute of limitations; that, after payment of certain costs and fees in connection with the guardianship proceedings, the balance of said fund be

paid to the State of Tennessee, its claim being entitled to priority.

From this decree Obion County has appealed and assigned errors.

Code, Sec. 4437, provides for the admission of three different classes of patients to State Insane Hospitals: First, that class known as State paying patients; second, County paying patients; and third, private paying patients.

Code, Sec. 4438, provides that the first class, or State pay patients shall be those who are poor persons, who are entitled to admission to the hospitals from each County in accordance with the quota as fixed.

This County quota, that is, the number that each County in the State shall be entitled to have maintained and cared for at the State's expense shall be one patient for every one thousand inhabitants or population contained in the County, according to the Federal census of 1930 and the Federal census as made and determined in the future. Code, Sec. 4479.

The second class, or those known as County pay patients, shall be those who are poor persons and who may be admitted to the hospital at the expense of the County of which the patient is a resident, which County has exhausted its quota in the hospital. Patients of the second class can only be admitted after regular commitment and upon special contract in each case between the Superintendent of the hospital and the County Judge or Chairman of the County of which the patient is a resident. Code, Sec. 4439.

The Superintendents of the hospitals shall give preference to the classes of patients in the order as above defined. Code, Sec. 4441.

Code, Sec. 4474, provides:

"Certification to the superintendent of the hospital by the county court clerk or county judge or chairman that an insane person ordered committed is a poor person, as herein defined, is only prima facie evidence of same, and the superintendent is authorized to make such further investigation as he deems proper to determine the matter, and if it is found that such person is not such a poor person, the superintendent is authorized and required to institute proceedings to collect from the estate of such person or from the one legally liable therefor, as herein provided, the amount expended for maintenance and otherwise of such patient. Said suit if for patients of the first class shall be in the name of the state and for its benefit and shall be brought and prosecuted by the district attorney of the judicial district of which the county from which the patient was sent is a part. If the second class of patients, same shall be in the name of the county from which the patient was sent and for its benefit, and shall be brought and prosecuted by the county attorney, if there be one of the county from which the patient was sent, and if said county has no attorney, then by the district attorney of that district, said recovery to include the whole amount of money expended for maintenance and care of such patient. The superintendent is also authorized, immediately upon determining such conditions as remove the patient from that of a poor person, to return the patient immediately after notice given, of five days, to the county court clerk or county judge or chairman of the county from which the patient came."

It is very earnestly insisted and very ably argued that Obion County is entitled to a quota of thirty patients to be maintained by the State free from any charge to the County; that the decree of the chancery court in this case deprives the county of a part of that quota "for the rea-

-son that Obion County had more than its quota allowed for the State to pay for with the exception of one quarter and, therefore, Obion County was paying for Roy Threlkeld and is entitled to the full recovery in this case.'' It is further contended that the fact that the State carried Threlkeld as a State pay patient was a mere matter of bookkeeping without statutory authority therefor.

We do not think this contention is sustained under Code, Sec. 4474.

This statute provides the superintendent is required to institute proceedings to collect from the estate of on inmate, who has such estate, the amount expended for his maintenance. It then provides that if the inmate is a State pay patient the suit shall be in the name of the State, and if a County pay patient in the name of the County.

The question in the case is whether Threlkeld was, as a matter of fact a State pay patient, under class number one, as defined by the statute. If in this class the statute provides that the State shall recover of his estate the cost of his maintenance. If as a matter of fact he was a County pay patient the statute provides that the County shall recover the cost of his maintenance. If of the latter class it was incumbent on the county to show the contract between the superintendent and the county judge for his admission and to show that the county had paid for his maintenance. This the county failed to do as shown by the report of the Master concurred in by the chancellor. This finding was based upon the testimony of the witness, Nash, and by the books and records of the hospital introduced by the witness.

An assignment of error is made to the effect that the proof fails to show that any money was expended by

the State for Roy Threlkeld, in that the witness, Nash, knew nothing about it.

This witness testified from the records of the hospital during the time Threlkeld was a patient, showing each month's entries upon the record books of the charges against Threlkeld; that the hospital was paid by the State at so much per patient; which was applied as a credit to the patient's account; that the amount so paid is not the average amount, but is for each and every State pay patient; that the hospital was not paid by the State for the interval when Threlkeld was a County pay patient.

The holding of the chancellor that a part of the county's account is barred by the statute of limitations is assigned as error. We think the assignment is well made. In making the payments for the maintenance of Threlkeld the county was in the exercise of a governmental function, and the rule is that, in such case, the statute of limitations does not run against the County. Hamblen County v. Cain, 115 Tenn. 279, 282, 89 S. W. 103.

In the fairly recent case of Nelson v. Loudon County, 176 Tenn. 632, 636, 144 S. W. (2d) 791, 792, it is said that "the statute of limitations does not run against a county when seeking to enforce a demand arising out of, or dependent upon, the exercise of its governmental functions as an arm of the state government."

With the exception of the one last mentioned all assignments of error are overruled. The decree of the chancery court awarding a judgment in favor of the State for $6851.13 is affirmed, and a judgment will be entered here for that amount. The decree awarding a judgment in favor of the county for $276.11 is modified and a judgment will be entered here for $441.50. The judgment will also provide that after the payment of the fees and

costs adjudged by the decree of the chancery court, and the costs of this appeal, the balance of said fund will be paid to the State of Tennessee and credited on the decree in its favor, the State being entitled to priority in the payment of the judgments.

Anderson, P. J., and Ketchum, J., concur.